# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE LEE XIONG,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:16-cv-0582 - JLT<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF LUCIO GOMEZ AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Lee Lee Xiong asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in finding her mental impairments were not severe. Because the ALJ failed to apply the proper legal standards and erred in evaluating the medical record, Defendant's motion for summary judgment is **DENIED** and the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

Plaintiff filed an application for benefits on August 26, 2010, alleging disability beginning September 12, 2005. (Doc. 10-4 at 36) The Social Security Administration denied the application at both the initial level and upon reconsideration. (*Id.* at 2, 15, 36) After requesting a hearing, Plaintiff

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant in this action.

1

testified before an ALJ on November 16, 2012. (Doc. 10-3 at 51) The ALJ determined Plaintiff had the following severe impairments: "fracture of the left femur status post open reduction internal fixation instrumentation insertion and removal, chronic knee pain from town meniscus, lateral discoid meniscus, and major depressive disorder." (Doc. 10-4 at 38) The ALJ found Plaintiff was capable of performing medium exertion work with postural limitations, as well as a limitation to "simple and repetitive type tasks. (*Id.* at 39) With these limitations, the ALJ determined Plaintiff was able to perform work in the national economy and issued an order denying benefits on December 13, 2012. (*Id.* at 44-45)

Plaintiff requested review of the ALJ's decision by the Appeals Council, which granted the request on April 30, 2014. (Doc. 10-4 at 52) The Appeals Council found it was "not clear" whether the ALJ considered evidence from a treating physician indicating that Plaintiff "had ongoing left leg pain with an unstable gait and … was using a cane for support." (*Id.*) Therefore, the Appeals Council found "[f]urther development and evaluation of the claimant's musculoskeletal impairments [were] necessary." (*Id.*) The Appeals Council vacated the ALJ's decision and remanded it with instructions for an ALJ that included obtaining, updated medical records, ordering a consultative examination, and offering Plaintiff another hearing. (*Id.* at 53)

Plaintiff testified at a second hearing on September 9, 2014. (Doc. 10-3 at 12, 30-31) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on October 10, 2014. (*Id.* at 12-23) The Appeals Council denied Plaintiff's request for review on February 25, 2016. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of*

*Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.     Relevant Medical Evidence**[2]

In July 2010, Plaintiff visited the Tulare Community Health Clinic due to chronic leg pain. (Doc. 10-10 at 30) She told Dr. Victor Sunga that she had "fatigue, lethargy, and crying spells, and she [was] also feeling depressed at times." (*Id.*) Plaintiff also reported she had "no concentration, no appetite, and … issues at home that [were] making this problem." (*Id.*) Further, she described having suicidal thoughts, without a plan. (*Id.*) Dr. Sunga referred Plaintiff to Rosandra Soleno, LCSW, for counseling. (*Id.*)

In August 2010, Ms. Soleno noted that Plaintiff continued to have suicidal thoughts, "without plan or intent." (Doc. 10-10 at 28) Plaintiff received a prescription for Zoloft. (*See id.* at 21)

Treatment notes dated September 2010 indicate Plaintiff continued to report she slept "poorly because of 'stuff on [her] mind.'" (Doc. 10-10 at 21) Plaintiff reported she had thoughts of suicide, but she had not attempted it. (*Id.*) In addition, Plaintiff said she was hearing things, such as funeral drums. (*Id.*) Plaintiff's dose of Zoloft was increased, and the doctor prescribed Risperdal. (*Id.*)

In October 2010, Ms. Novelo-Soleno noted Plaintiff reported her medication was "helping a little bit," because her hallucinations had decreased. (Doc. 10-10 at 15) Later that month, Dr. Reddy Prasad noted Plaintiff had a "history of major depression with psychotic features." (*Id.* at 12) Plaintiff told Dr. Reddy that she was feeling "significantly better since the start of the medication." (*Id.*) She said she was not having any auditory or visual hallucinations. (*Id.*) Dr. Reddy observed that Plaintiff's thoughts appeared "congruent, logical, and goal directed." (*Id.*) Dr. Reddy opined Plaintiff was "stable on Zoloft and Risperdal," and directed her to continue with psychotherapy. (*Id.* at 12-13)

On December 20, 2010, Plaintiff told Dr. Prasad Reddy at the Tulare Community Health Clinic that she had "been doing well," and estimated she had "a 60% improvement in her symptoms." (Doc. 10-10 at 3) Plaintiff said she was getting "about 6 hours of sleep" each night, and believed the medications were beneficial. (*Id.*) However, Plaintiff reported she was still "hearing voices once in a while." (*Id.*) She did not have any suicidal or homicidal ideations. (*Id.*) Dr. Reddy observed that Plaintiff was "able to answer questions and understand[] the questions mostly well." (*Id.*) Dr. Reddy

---

[2] While the Court has reviewed the entirety of the medical record, Plaintiff challenges the evaluation of medical evidence related to her mental impairments. Accordingly, the summary excludes any evidence related to her physical impairments.

opined Plaintiff's mood was "good" and her affect was broad. (*Id.*) He believed Plaintiff's "insight and judgment [were] limited." (*Id.*) Dr. Reddy determined Plaintiff should continue on the same amount of Zoloft, but increased her dose of Risperdal. (*Id.*) In addition, he indicated should "continue psychotherapy." (*Id.* at 4)

Dr. Anna Franco completed a psychiatric review and mental residual functional capacity assessment on February 2, 2011. (Doc. 10-10 at 43-53) She noted Plaintiff had been diagnosed with depression, not otherwise specified, but believed Plaintiff's mood was "stable and well controlled by her anti-depressant." (*Id.* at 46, 55) According to Dr. Franco, Plaintiff had a mild restriction in activities of daily living; no difficulties with social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (*Id.* at 51) Dr. Franco concluded Plaintiff's mental impairment was not severe. (*Id.* at 43, 56)

On February 7, 2011, Plaintiff reported her depression had "improved by about 50%," but "she still hear[d] voices once or twice a day and… the 'drums playing.'" (Doc. 10-11 at 40) Plaintiff told Dr. Reddy that she was "trying to get out and do some activities." (*Id.*) Dr. Reddy observed that Plaintiff's mood was good though her affect was flat. (*Id.*) Dr. Reddy diagnosed Plaintiff with "Major depression, recurrent, severe with psychosis, chronic," and increased Plaintiff's doses of Zoloft and Risperdal. (*Id.*)

On March 11, 2011, Dr. Fariba Vesali performed a consultative orthopedic evaluation. (Doc. 10-10 at 57-61) Dr. Vesali noted Plaintiff had a history of depression but did "not have any idea or intention of hurting herself at [that] time." (*Id.* at 58) Dr. Vesali found Plaintiff "did not have any difficulties to follow three-step commands." (*Id.*) In addition, Plaintiff was able to "appropriately answer[] questions" during the examination. (*Id.*)

In April 2011, Plaintiff visited the Tulare Community Health Clinic, reporting she had "back and right foot pain." (Doc. 10-10 at 72) Dr. Sunga noted Plaintiff's did not include "anxiety, depression [or] insomnia." (*Id.*) In addition, Dr. Sunga opined Plaintiff had "normal insight" and "normal judgment," with "appropriate mood and affect." (*Id.* at 74)

On October 31, 2011, Plaintiff told Dr. Reddy that she was feeling "stressed" and "apprehensive about her [disability] application." (Doc. 10-11 at 37) Plaintiff reported that she "ha[d] to do well in

the psychiatric assessment… [or] her application for assessments will be denied." (*Id.*) Dr. Reddy found "no worsening of neurovegetative symptoms of depression." (*Id.*) He opined Plaintiff had a "flat" affect and "limited" insight and judgment. (*Id.*) Plaintiff was directed to continue taking Zoloft and Risperdal. (*Id.* at 37-38)

Dr. Roger Izzi performed a psychiatric evaluation on November 1, 2011. (Doc. 10-11 at 12) Plaintiff reported she angered easily, cried without provocation, got depressed, and was unable to do what she normally would. (*Id.*) Plaintiff told Dr. Izzi that her children, who ranged in age from 2 years to over 20 years old, did "all the household chores." (*Id.*) Plaintiff said she stayed home during the day, did not belong to any clubs, groups, or organizations; attend religious services; or visit any family or friends. (*Id.*) Dr. Izzi observed that Plaintiff's "affect seemed dysphoric." (*Id.* at 13) He found Plaintiff was "able to immediately recall three words without any obvious difficulty," and "[u]pon delayed recall, she was able to recall two of the three words." (*Id.* at 14) When Plaintiff was asked to spell words to test her attention and concentration, she responded that she did not "know how to spell." (*Id.*) Dr. Izzi opined Plaintiff "did poorly on the present mental status examination," and believed that "[h]er responses were considered so poor that they could only suggest a poor effort and poor motivation." (*Id.* at 14-15) According to Dr. Izzi, Plaintiff had "multiple medical problems and there [was] likely to be depression secondary to her awareness of her physical limitations." (*Id.* at 15) Dr. Izzi opined:

> The present evaluation suggests that the claimant does appear capable of performing a simple and repetitive type task on a consistent basis over an eight-hour period. Her ability to get along with peers or be supervised in [a] work-like setting is not limited. The claimant's mood disorder will fluctuate as her subjective perception of pain fluctuates. Any significant fluctuation of mood would limit her ability to perform a complex task on a consistent basis over an eight-hour period. On a purely psychological basis, the claimant appears capable of responding to usual work session situations regarding attendance and safety issues. On a purely psychological basis, the claimant appears capable of dealing with changes in a routine work setting.

(*Id.* at 15) Dr. Izzi gave Plaintiff a GAF score of 68[3], and concluded she had a depressive disorder, not

---

[3] Global Assessment Functioning ("GAF") scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV* at 34.

otherwise specified. (*Id.* at 14)

On November 15, 2011, Ms. Soleno noted Plaintiff had "minor improvement" with her medication. (Doc. 10-11 at 36) Plaintiff "continue[d] to express feelings of low self-worth related to her inability to work." (*Id.*) In addition, Plaintiff described being "involved with her 2-year-old daughter, but she [was] limited in the amount of physical activity she [could] do with her." (*Id.*)

In December 2011, Dr. Harvey Bilik reviewed the medical record and noted that while Plaintiff "appear[ed] to allege worsening severity of mental impairments on appeal, … none [appeared] evident in the MER received subsequent to the initial determination." (Doc. 10-11 at 19) Dr. Bilik affirmed the conclusion of Dr. Franco that Plaintiff's mental impairments were not severe. (*Id.*)

At a follow-up appointment with Dr. Reddy in February 2012, Plaintiff reported "her social security application was denied." (Doc. 10-11 at 32) Dr. Reddy observed that Plaintiff had "poor eye contact," "decreased psychomotor activity," and a flat affect. (*Id.*) He believed Plaintiff's "insight and judgment [were] poor." (*Id.*) Dr. Reddy opined Plaintiff had "good functioning on Zoloft." (*Id.*) The same month, Ms. Soleno noted Plaintiff's mood was "somewhat constricted but not as flat as when she was seen previously." (*Id.* at 31)

In April 2012, Dr. Reddy noted that Plaintiff reported she felt "better than before but … her depression [was] not completely dissipated." (Doc. 10-11 at 27) Dr. Reddy opined Plaintiff's "insight and judgment [were] limited." (*Id.*) He opined Plaintiff's depression was "in partial remission with current improvement in symptoms." (*Id.*) Dr. Reddy discontinued the prescription for Risperdal. (*Id.*)

At a therapy session with Ms. Soleno in June 2012, Plaintiff reported she was "doing ok." (Doc. 10-12 at 19) Ms. Soleno opined Plaintiff's mood was euthymic and her attitude was "cooperative and less hopeless." (*Id.*) She also believed Plaintiff exhibited fair judgment, reasoning, and insight. (*Id.* at 20)

In August 2012, Plaintiff told Ms. Soleno her depression had "improved," but she was concerned about her daughter leaving for college. (Doc. 10-12 at 11) Plaintiff said she did "not know how she [would] manage with her baby" once her daughter left for school, because she both helped with the baby and with cooking. (*Id.*) Ms. Soleno opined Plaintiff depression was in remission, but she was "facing adjustment problems at home requiring additional support." (*Id.* at 11-12) The following

7

month, Plaintiff told Ms. Soleno that she had "been crying after her daughter left for college," but she was "adapting to having to do additional work." (*Id.* at 9) According to Ms. Soleno, Plaintiff's mood was within normal limits; her affect was broad; and she had fair reasoning, judgment, and insight. (*Id.* at 9) Ms. Soleno again opined Plaintiff's depression was in remission. (*Id.*)

Dr. Sunga completed a residual functional capacity questionnaire on October 24, 2012. (Doc. 10-12 at 22-26) He noted Plaintiff had been diagnosed with left hip pain, left knee pain, plantar fasciitis, depression, and anxiety. (*Id.* at 22) According to Dr. Sunga, Plaintiff had emotional factors that "contribute[d] to the severity of … [her] symptoms and functional limitations." (*Id.* at 23) He believed Plaintiff's symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks, and that Plaintiff could maintain attention for one hour at a time. (*Id.* at 24) Dr. Sunga opined Plaintiff was incapable of working even "low stress" jobs. (*Id.* at 24, 206)

In early 2013, Plaintiff reported she was suffering "incapacitating" pain in her left knee. (Doc. 10-12 at 51) Dr. Sunga opined Plaintiff's memory was intact and she had an "appropriate mood and affect." (*Id.* at 53) Through April 2013, Dr. Sunga continued to find Plaintiff's memory was intact and she had an appropriate mood and affect" when she had check-ups for pain. (*See, e.g., id.* at 46, 50)

On April 16, 2014, Mor Chang, MSW/ASW, performed an assessment intake at Healing Hope clinic. (*See* Doc. 10-13 at 2, 27-31) Ms. Chang noted Plaintiff described "somatic pain, depression, medical problems, marital issues, financial problems, [and] anxiety." (*Id.* at 27) Ms. Chang observed that Plaintiff had a blunt and tearful affect; and her mood appeared angry, irritable, sad, depressed, and worried. (*Id.* at 29) In addition, she opined Plaintiffs thoughts appeared irrational and incoherent. (*Id.* at 30) According to Ms. Chang, Plaintiff's memory was poor. (*Id.*) Ms. Chang diagnosed Plaintiff with a major depressive disorder, recurrent, severe, with psychotic features; and post traumatic disorder, chronic. (*Id.* at 31) She gave Plaintiff a GAF score of 45.[4] (*Id.*) The following week, Plaintiff began psychotherapy at Healing Hope with Ms. Chang under the supervision of Dr. Mark Popper. (Doc. 10-13 at 26; *see also id.* at 6-26)

In April 2014, Ms. Chang noted that Plaintiff "continue[d] to exhibit auditory/visual

---

[4] A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

hallucination." (Doc. 10-13 at 26) Ms. Chang observed that Plaintiff's affect was blunt, and "[h]er mood was sad, dysphoric and depressed." (*Id.*, emphasis omitted) On April 30, Plaintiff "was tearful during [her therapy] session." (*Id.* at 24) Ms. Chang noted Plaintiff "presented with irritability, depressed mood." (*Id.* at 24)

Ms. Chang observed that Plaintiff "was irritable, dysphoric and worried" during her session on May 7, 2014. (Doc. 10-13 at 23) Plaintiff continued to exhibit a "depressed mood and anxiety" throughout the month of May. (*Id.* at 21, 22) In addition, Ms. Chang noted Plaintiff "continued to present with visual and auditory hallucination." (*Id.* at 20)

In June 2014, Ms. Chang noted Plaintiff "reported feeling depressed and frustrated." (Doc. 10-13 at 15) Ms. Chang noted Plaintiff "became teary eye[d] during the session." (*Id.*) In addition, Plaintiff "continued to report visual and auditory hallucination," as well as "anxiety and distressed feelings." (*Id.* at 14) Ms. Chang opined Plaintiff's "affect and mood were depressed, sad, irritable, and dysphoric." (*Id.*) Further, she believed Plaintiff was "preoccupied with worries, intrusive and negative thoughts." (*Id.* at 13) Ms. Chang opined Plaintiff had a "low tolerance [for] frustration and low self-esteem." (*Id.*)

In July 2014, Ms. Chang observed that Plaintiff "had a hard time concentrating and focusing" during her therapy session. (Doc. 10-13 at 5) In addition, she noted Plaintiff had "a flat affect" and "was quiet throughout the session." (*Id.*)

On August 26, 2014, Dr. Popper completed a form regarding Plaintiff's ability to do work-related activities. (Doc. 10-13 at 3) Dr. Popper noted Plaintiff had been "diagnosed with Major Depressive Disorder; Recurrent; Severe with Psychotic Features, Posttraumatic Stress Disorder, Chronic with Delayed Onset." (*Id.* at 4) Dr. Popper opined Plaintiff was "unable to meet competitive standards," with many mental abilities and aptitudes necessary for unskilled work including: carrying out very short and simple instructions; maintaining attention for two-hour segments; sustaining an ordinary routine; responding appropriately to changes in a routine work setting; understanding, remembering, and carrying out detailed instructions; and dealing with stress of semiskilled and skilled work. (*Id.* at 3-4) Dr. Popper noted Plaintiff had "poor concentration, intrusive thoughts, persistent sadness, rumination of thoughts, irritability, memory disturbance (forgetful), anxious, low tolerance to

frustration and relational issues." (*Id.* at 4) He also believed Plaintiff was "unable to meet competitive standards" with maintaining socially appropriate behavior and interacting with the general public. (*Id.*)

Dr. Johnny Fong completed a "medical history, physical examination, psychological and mental examination" on August 21, 2014. (Doc. 10-13 at 32-34) He noted Plaintiff began seeing a psychiatrist regularly beginning in 2012, and was "taking Cymbalta and Sertraline and Seroquel for the depression." (*Id.* at 32) Plaintiff told Dr. Fong that "[i]n the last 2 years, she [had] been having memory loss, loss of attention span and focus." (*Id.*) Dr. Fong opined Plaintiff "showed memory loss and lack of recall when she was asked to give back the exact order of 4 colors given her," as well as when she was asked to recall the exact order of four numbers and four fruits. (*Id.* at 33)

**B.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the application date of August 26, 2010. (Doc. 10-3 at 13) At step two, the ALJ found Plaintiff's severe impairments included: "left femur fracture status post intramedular rodding and removal, left knee meniscal tear, plantar fasciitis, obesity, and lumbago." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 16-17) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds occasionally, sit for six to eight hours in an 8-hour day, and stand and walk for six to eight hours in an 8-hour day. She can occasionally climb, kneel, crawl, crouch, and balance, and frequently stoop.

(*Id.* at 17) With these limitations, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 22) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 23)

**DISCUSSION AND ANALYSIS**

Plaintiff contends the ALJ erred at step two of the sequential evaluation in finding that her mental impairments were "non-severe." (Doc. 14 at 9-17) According to Plaintiff, the ALJ erred in evaluating the medical record and rejecting the opinion of Dr. Popper in reaching this conclusion. (*Id.* at 13-16) On the other hand, the Commissioner argues that Plaintiff did not meet her burden to show the severity of her symptoms, and "[t]he ALJ properly found that Plaintiff's depression was non severe

and did not result in any work-related functional limitations." (Doc. 18 at 9, 10)

## A. Step Two Findings

The inquiry at step two is a *de minimus* screening for severe impairments "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153 (1987). At step two, a claimant must make a "threshold showing" that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id*. at 146-47; see also 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment. *Id.*; *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("The burden of proof is on the claimant at steps one through four...").

An impairment, or combination thereof, is "not severe" if the evidence establishes that it has "no more than a minimal effect on an individual's ability to do work." *Smolen*, 80 F.3d at 1290. The Ninth Circuit explained: "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A medical diagnosis alone "does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities." *Nottoli v. Astrue*, 2011 U.S. Dist. LEXIS 15850, at *8 (E.D. Cal. Feb. 16, 2011). For an impairment to be "severe," it must limit the claimant's ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(c), 416.920(b). Specifically, basic work activities include "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations, and [d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b).

### 1. "Paragraph B" criteria

The "paragraph B" criteria set forth in 20 C.F.R., Pt. 404, Subpart P, App. 1 are used to evaluate the mental impairments of a claimant, and include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *See id.* The Regulations inform claimants:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. § 404.1520a(d)(1). The ALJ concluded Plaintiff had "mild limitation" in activities of daily living and concentration, persistence, or pace. (Doc. 10-3 at 16) The ALJ also found Plaintiff had "no limitation" with social functioning, and no episodes of decompensation. (*Id.*) As a result, the ALJ concluded Plaintiff's "mental impairment … is non-severe." (*Id.*)

2. ALJ's evaluation of Dr. Popper's opinion

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A treating physician's opinion is not binding upon the ALJ and may be discounted whether another physician contradicts it. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.,* 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). The opinion of Dr. Popper was contradicted by Drs. Izzi, Bilik, and Sunga. Therefore, the ALJ was

required to set forth specific and legitimate reasons for rejecting the opinions articulated by Dr. Popper.

Examining the medical evidence, the ALJ summarized the conclusions of Dr. Popper related to Plaintiff's memory, concentration, ability to maintain regular attendance, and social functioning. (*See* Doc. 10-3 at 15-16) The ALJ rejected the limitations by stating: "These limitations are overly restrictive and appear to be based solely on the claimant's subjective complaints. Her ability to care for an infant and a disabled husband are inconsistent with Dr. Popper's opinion." (*Id.* at 16) Plaintiff contends these reasons for rejecting the limitations of Dr. Popper are not "specific and legitimate" as required by the Ninth Circuit. (*Id.* at 15-17)

### a. Inconsistencies with the record

An ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). Significantly, when an ALJ believes a physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

The ALJ determined Dr. Popper's limitations were "overly restrictive" in light of the evidence in the record. However, the ALJ failed to explain why this appeared to be the case or to identify any specific conflicts between Dr. Popper's opinions and the record. The ALJ offered only her conclusion, which is insufficient. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (to reject an opinion as inconsistent with the medical record, the 'ALJ must do more than offer his conclusions"); *see also Russell v. Colvin,* 2017 U.S. Dist. LEXIS 7044 at *11 (E.D. Cal. Jan. 17, 2017) (finding "the vague assertion that [a physician's] findings are 'overly restrictive' does not withstand appellate review" because the "[t]he state of being overly restrictive is a conclusion that lacks details as to what limitation is unsupported by which clinical findings"). Accordingly, the unidentified inconsistencies with the record fail to support the decision to reject Dr. Popper's opinion.

### b. Limitations based upon Plaintiff's subjective complaints

The Ninth Circuit has determined that an ALJ may reject an opinion based upon "a claimant's self-reports that have been properly discounted as not credible." *Tommasetti v. Astrue*, 533 F.3d 1035,

13

1041 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) ("The ALJ thus disregarded [the physician's] opinion because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted. This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician."). For example, in *Tommasetti*, the Court reviewed the physician's records, and found "they largely reflect[ed] Tommasetti's reports of pain, with little independent analysis or diagnosis." *Id.*, 533 F.3d at 1041. Because the ALJ found the claimant's subjective complaints lacked credibility, the Court concluded that "the ALJ's adverse credibility determination supports the limited rejection of [the physician's] opinion because it was primarily based on Tommasetti's subjective comments concerning his condition." *Id*.

The ALJ rejected the limitations identified by Dr. Popper, in part, on the grounds that the limitations "appear[ed] to be based solely on the claimant's subjective complaints." (Doc. 10-3 at 16) However, the record does not support this conclusion. Dr. Popper supervised Ms. Chang and signed each summary of her therapy session notes concerning Plaintiff. As a result, he was aware of the observations of Ms. Chang that Plaintiff repeatedly exhibited a blunt affect, was tearful during her sessions, appeared preoccupied, and "had a hard time concentrating and focusing" during her therapy session. (*See, e.g.,* Doc. 10-13 at 5, 14-15, 24, 26, 29) Indeed, when asked to identify findings that supported the opinions regarding Plaintiff's memory and ability to handle stress, Dr. Popper noted in his questionnaire that Plaintiff had a "poor concentration." (*Id.* at 4) Thus, there were objective observations to support Dr. Popper's conclusions, and the ALJ erred in rejecting the limitations as being based solely upon Plaintiff's subjective complaints.

    *c. Conflict with Plaintiff's level of activity*

The Ninth Circuit determined the opinion of a treating physician may be given less weight when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue,* 429 Fed. App'x 649, 652 (9th Cir. 2011) (the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the limitations identified by the doctor conflicted with the claimant's daily activities).

In this case, the ALJ concluded Plaintiff's "ability to care for an infant and a disabled husband

are inconsistent with Dr. Popper's opinion." (Doc. 10-3 at 16) Notably, Plaintiff testified that she had assistance from her older children with taking care of the baby, as they would do things such as "get a baby wipe, the diaper, put [them] on the sofa, get ready for [her]." (*Id.* at 37) Plaintiff also reported she was responsible only for "reheating" meals. (*Id.*) Thus, it appears Plaintiff did not have the sole responsibility for caring for her baby or husband.

Regardless, the ALJ does not explain how the ability to care for her baby and her husband is inconsistent with Dr. Popper's opinions that Plaintiff was "unable to meet competitive standards," with many mental abilities and aptitudes necessary for unskilled work including: carrying out very short and simple instructions; maintaining attention for two-hour segments; sustaining an ordinary routine; understanding, remembering, and carrying out detailed instructions; and dealing with stress of semiskilled and skilled work. (Doc. 10-13 at 3-4) Because the ALJ fails to explain how Plaintiff's level of activity is inconsistent with the findings of Dr. Popper, Plaintiff's activities do not support the ALJ's rejection of the medical opinion. *See Rollins*, 261 F.3d at 856; *see also Russell*, 2017 U.S. Dist. LEXIS 7044 ("where an ALJ seeks to discredit… opinions as inconsistent with a Plaintiff's daily activities, the ALJ must explain how the inconsistency or contradiction cuts against the statement or opinion being discredited").

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is

15

fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify specific and legitimate reasons supported by the record for rejecting the limitations assessed by Dr. Popper. Because the ALJ failed to resolve the conflicts in the record regarding Plaintiff's mental limitations, the matter should be remanded for the ALJ to re-evaluate the medical evidence to determine Plaintiff's mental residual functional capacity. *See Moisa*, 367 F.3d at 886.

### **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical record at step two, and the decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate on these grounds, it offers no findings regarding the remaining issue in Plaintiff's opening brief. Accordingly, the Court **ORDERS**:

1. Defendant's motion for summary judgment (Doc. 18) is **DENIED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Lee Lee Xiong and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 19, 2018**   /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE